A01A2261. NEWBERN v. THE STATE.
(563 SE2d 872)

SMITH, Presiding Judge.

Raymond W. Newbern was found guilty by a jury of two counts of vehicular homicide, two counts of DUI, and failure to drive on the right side of the road. For sentencing, the trial court merged with the first count of vehicular homicide all the remaining counts except driving on the wrong side of the road. Newbern's amended motion for new trial was denied, and he appeals. He raises claims of ineffective assistance of counsel and failure of the State to prove his identity as

the driver of the car beyond a reasonable doubt and to a moral certainty. We conclude that the trial court correctly found that Newbern's counsel was effective, albeit not for the reason stated by the court, and that the jury was authorized to find that the State proved Newbern's identity as the driver beyond a reasonable doubt. We therefore find no reversible error and affirm.

Construed to support the verdict, the evidence presented at trial showed that Newbern called his friend Steve Rice three or four times, requesting that Rice pick him up at the home of Newbern's mother-in-law. Eventually, Rice picked up Newbern about 5:00 p.m., and they returned to Rice's home. They left briefly in Rice's 1977 black Oldsmobile Cutlass to purchase car parts in Athens. Rice did not lend out his car, but he let Newbern drive his car when he was present, and on the way home, Newbern was allowed to drive. They stopped at a supermarket for some beer. After returning to Rice's trailer, they parked the car and went to a neighbor's home to watch NASCAR racing. Because the neighbor did not permit smoking in his home, Newbern stepped outside several times, smoking and talking on a wireless phone. At some point, Newbern left. When Rice and the neighbor heard sirens and observed emergency vehicles passing by, they turned on the neighbor's scanner and learned a wreck had occurred nearby on Highway 29. At that point, Rice noticed that his car was gone.

Law enforcement officials testified that a two-vehicle accident occurred at 9:00 p.m. Rice's 1977 Cutlass, traveling north on Highway 29, crossed the centerline and struck the car driven by the victim, causing the victim's death. Newbern was thrown from the car and into the roadway at the end of a residential driveway. One of the residents of the house was a nurse, and she attempted to assist at the scene. She asked Newbern several questions, trying to determine whether he was oriented, so she could assess whether he had a serious head injury. She testified that Newbern appeared to her to be completely oriented and not confused. She asked Newbern whether he had been alone in the car, and he replied that he had been.

A Madison County sheriff's deputy was one of the first officers on the scene, and he spoke with Newbern, who was conscious. Newbern also told this deputy that he had been driving and that he was the sole occupant of the car. An emergency medical technician who responded to the crash scene testified that Newbern was conscious and responsive to questions. The EMT testified that Newbern told him he was the car's driver and that he had been alone. Newbern was removed by ambulance to Athens Regional Medical Center, where a nursing assistant drew blood from him at the direction of a state trooper. Although the nursing assistant did not recognize him, Newbern was alert enough to recognize the assistant as someone he had

worked with years before at a newspaper. A state trooper who spoke with Newbern at the hospital testified that Newbern appeared to understand their conversation and that his responses made sense. The trooper testified that he was able to carry on a conversation "just like me and you are talking now. I mean, he was — he was laying down. He had some obvious injuries, but he was speaking clearly, coherently. I could understand him. He could understand me." After reading Newbern his *Miranda* warnings, the trooper asked him if he had been driving the car, and Newbern first responded that he

> had been at a friend's house, drinking. And that he had left to go to the beer store, and when he left he was driving. And I said did you have any passengers. And he said, no. I said, so you were alone in the vehicle. He said, yes. I asked him how much he had to drink, and he told me he had two beers and one shot of liquor. And I asked him again, so you were driving the vehicle when it crashed. And he paused and he hesitated. And then he finally answered by saying, no, my friend, was driving. And I asked who was the friend, and he would not give me any kind of name. I asked him repeatedly, if you weren't driving, who was driving. He wouldn't tell me anything other than just a buddy of his.

After investigation, Newbern was found to be intoxicated.

1. Newbern contends the trial court erred in finding that trial counsel was effective. Newbern's medical records were never introduced into evidence. He argues that his counsel was ineffective in failing to subpoena hospital personnel who could authenticate these records, which would have showed that he was "confused" following the accident. He maintains that the trial court erred in ruling that defense counsel had a strategic or tactical reason for failing to do so.

In several places, Newbern's hospital records lend credence to the idea that he was, in fact, confused after the wreck. The "trauma flow sheet," a record made while Newbern was at the hospital, shows that the person monitoring Newbern's condition indicated he was "confused," and even shortly before discharge he was "still unable to state correct month of the year." In the discharge summary, a doctor noted that Newbern was "unclear about his consciousness at the scene." The emergency department record indicated Newbern was conscious upon arrival at the hospital, but "somewhat confused and disoriented."

Newbern argues that showing his confusion was crucial to his defense, showing that he was mistaken when he told several questioners that he was driving the car when the crash occurred, perhaps thinking about the time earlier that day when Rice had allowed him

to drive his car. He also argues that his conflicting statements to the trooper at the hospital about who was driving left the impression that he was lying and showing that he was confused would have mitigated this effect by attributing the conflicting statements to his confusion.

Trial counsel testified at the hearing on the motion for new trial. It is clear from his testimony that he considered the records favorable to the defense and that he wanted the jury to have the information they contained. In fact, he emphasized these records in his opening statement. Yet he did not subpoena any witnesses to authenticate the records, nor did he determine not to use the records based upon any kind of cost/benefit analysis. When asked directly by the trial judge why he had not subpoenaed "somebody from the hospital," trial counsel testified that he had not done so because both he and the prosecutor had the records and knew what they said. He planned to present the information from the records to the jury in his opening statement, and then if the prosecutor objected, it would appear to the jury that the prosecutor was trying to hide something. But when the records were tendered, the prosecutor objected at a bench conference, outside the presence of the jury.

A trial court's finding that trial counsel was not ineffective must be affirmed unless it is clearly erroneous. *Humphrey v. State*, 249 Ga. App. 805, 809 (4) (549 SE2d 144) (2001). Therefore, if any evidence exists to support the trial court's finding, it controls. *State v. Burnett*, 220 Ga. App. 133 (469 SE2d 324) (1996). Although we must agree with Newbern that trial counsel's testimony regarding his reasons for not subpoenaing hospital personnel to authenticate the medical records is not impressive, it is nevertheless some evidence to support the trial court's finding that trial counsel was effective. This finding was not clearly erroneous.

Moreover, to prevail, Newbern is required to show not only that his counsel's performance was deficient, but also that but for his counsel's errors, a reasonable probability exists that the jury would have reached a different verdict. *Lewis v. State*, 247 Ga. App. 440, 441 (543 SE2d 810) (2000). It is apparent that most, if not all, the information in the records was elicited from the State's witnesses during cross-examination. The jury was aware of the possibility that Newbern was confused. Because the jury was aware of this information, admission of the records would not have changed the outcome of the trial. Newbern therefore has not satisfied the second prong of the test set forth in *Strickland v. Washington*, 466 U. S. 668, 687 (104 SC 2052, 80 LE2d 674) (1984).

2. Both Newbern and the State acknowledged that the identity of the driver of Rice's car was a crucial issue at trial. Newbern contends the State did not prove his identity as the driver beyond a reasonable

doubt. He argues that the evidence of identity was circumstantial and that the State never excluded the hypothesis that Rice was driving his own car. No evidence showed that anyone saw Newbern driving, he was not identified as being behind the wheel, and he was never asked for, and never gave, a statement about how the accident occurred. He was found over 100 feet away from the point of impact. Two witnesses on Newbern's behalf testified they saw two people in Rice's car just moments before the accident. And after the crash, Rice was on the scene, talked to the sheriff, and tried to remove a package of beer from the car. Although Newbern told at least four people he had been driving the car, he argues that his admission is consistent with his having driven the car earlier in the day. Because the evidence regarding the identity of the driver was circumstantial, Newbern claims that "a serious risk of mistaken identity" exists here.

Citing other cases in which circumstantial evidence of the identity of the driver of a vehicle was sufficient, he distinguishes those cases as providing more "specific" facts. In *Krull v. State*, 211 Ga. App. 37, 39 (438 SE2d 152) (1993), we reviewed a number of other cases "in which DUI convictions have been upheld on circumstantial evidence, against the defendant's assertion that the evidence failed to prove that he was the driver of the car." We concluded that the circumstantial evidence was insufficient to show that Krull was the driver. We did so, however, because the "sum total of the evidence identifying" the defendant as the driver was the officer's observation of him "in the driver's portion of the vehicle" or "behind the wheel," and the officer's testimony that the defendant told him he wanted to move the vehicle.

Here, Newbern is correct that some of the evidence presented at trial was circumstantial. Because there was a possibility that another injured person might be present, law enforcement personnel searched the area and found no one other than Newbern and the two persons in the other car, and they saw no blood trails. Although Rice turned up at the scene of the crash later, he appeared uninjured despite the severity of the crash.

But the evidence was not entirely circumstantial. The testimony at trial showed not only that Newbern told at least four people that he had been driving the car, but also that he specifically stated that he was alone in the car. He was asked these questions while lying bleeding on the roadside after the crash, and it is inherently unreasonable that his answers referred to a time earlier in the day when he and Rice were together in the car and Rice allowed him to drive. This was direct evidence, distinguishing this case from *Krull* and the cases discussed in that opinion. Although this evidence was in conflict with Newbern's later response that Rice was driving, it was for the jury to determine the credibility of the evidence. *Walsh v. State*,

220 Ga. App. 514, 516 (469 SE2d 526) (1996). The evidence presented was sufficient to authorize the jury to conclude that Newbern was driving the car at the time of the crash.

*Judgment affirmed. Barnes and Phipps, JJ., concur.*

DECIDED MARCH 18, 2002 —
RECONSIDERATION DENIED APRIL 8, 2002 —

*Wiggins & Norris, Morton M. Wiggins III, Blaine A. Norris*, for appellant.

*Robert W. Lavender, District Attorney*, for appellee.